**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re:<br><br>BMI OLDCO INC., *et al.*,[1]<br><br>Debtors. | CHAPTER 11<br><br>Bankr. Case No. 23-90794 (MI)<br><br>Civ. No. 4:25-cv-02193 (GCH) |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'**
**OBJECTION AND RESPONSE TO THE BANKRUPTCY COURT'S REPORT**
**AND RECOMMENDATION TO THE DISTRICT COURT SEEKING**
**<u>WITHDRAWAL OF THE REFERENCE</u>**

---

[1]   The Debtors in this case, along with the last four digits of each Debtor's federal tax identification number, are: BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) (8715) and Barretts Ventures Texas LLC (0787).  The Debtors' address is 5605 North MacArthur Boulevard, Suite 1000, PMB 139, Irving, Texas 75038.

DOC# 10351785

**TABLE OF CONTENTS**

NATURE AND STATE OF THE PROCEEDING ................................................................. 1

STATEMENT OF THE ISSUE AND STANDARD OF REVIEW .................................... 3

SUMMARY OF THE ARGUMENT ................................................................................... 4

ARGUMENT ......................................................................................................................... 6

I.    THERE IS NO PROCEEDING FROM WHICH TO WITHDRAW THE
REFERENCE NOR ANY CASE OR CONTROVERSY SUPPORTING THE
CONTEMPLATED ACTION .................................................................................... 6

II.    THE CONTEMPLATED ACTION WOULD CONTRAVENE
CONTROLLING AUTHORITY AND THE SEVENTH AMENDMENT ................. 9

    A.    Binding Authority Forecloses the Contemplated Action........................................ 9

    B.    The Contemplated Action Is Inconsistent with the Seventh Amendment and
28 U.S.C. § 1411 ................................................................................................. 15

III.  CAUSE DOES NOT EXIST TO WITHDRAW THE REFERENCE IN ANY
EVENT .................................................................................................................... 19

CONCLUSION ................................................................................................................... 26

The Official Committee of Unsecured Creditors (the "**Committee**") of BMI Oldco Inc. (f/k/a Barretts Minerals Inc.) ("**BMI**") and Barretts Ventures Texas LLC (together with BMI, the "**Debtors**"), by and through its undersigned counsel, hereby objects and responds to the bankruptcy court's *sua sponte Abatement Order and Report and Recommendation to District Court* (the "**Report**") (ECF No. 1479) as follows:[2]

### NATURE AND STATE OF THE PROCEEDING

1.      On October 2, 2023, the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas Houston Division (the "**Bankruptcy Court**").[3]  The Debtors' stated purpose for these bankruptcy cases is to address and resolve claims arising from exposure to talc mined by BMI and its affiliates alleging that the talc contained asbestos.[4]

2.      Following the April 29, 2024 sale of the their talc business,[5] the Debtors were left without an operating business to rehabilitate and few, if any, assets to maximize other than their passive interests in two properties located in Texas.[6]  The Committee contends that the Debtors remain in bankruptcy primarily, if not solely, to pursue impermissible bankruptcy releases for the talc liabilities of their wealthy, solvent non-debtor affiliates— namely Minerals Technologies Inc. ("**MTI**") and Specialty Minerals Inc. ("**SMI**").[7]  And,

---

[2]   References herein to pleadings in the bankruptcy case, Case No. 23-90794 (MI), will be cited as "ECF No. ___".

[3]   *See* ECF No. 1.

[4]   *See* ECF No. 13 ¶ 5.

[5]   *See* ECF No. 862.

[6]   *See* ECF No. 994 ¶ 18.

[7]   *See* ECF No. 862; *see also* ECF No. 994.

in June 2024, the Committee moved to dismiss the Debtors' bankruptcy cases because, *inter alia*, they lack any legitimate bankruptcy purpose.[8]

3.    The parties agreed to delay the hearing on the motion to dismiss in order to pursue mediation, which ultimately failed to achieve a consensual resolution.    Soon thereafter, on April 2, 2025, the Debtors filed a plan of reorganization comprising two alternative structures: one that seeks relief under section 524(g) of the Bankruptcy Code, and one that does not.[9]    Both options would, however, purport to provide broad, now unlawful Purdue-equivalent releases of talc liability to MTI and SMI that the Committee contends are illegitimate under the Bankruptcy Code.

4.    On April 14 and 15, 2025, the Bankruptcy Court heard the motion to dismiss, which it denied.[10]    The Committee seeks to appeal that decision.[11]

5.    Following the hearing on the motion to dismiss, on April 16, 2025, the Bankruptcy Court, *sua sponte*, entered a Case Management Order (the "**CMO**"), which advised that the Bankruptcy Court was "considering (i) ordering that a determination be made in this case of whether any of the talc sold by the Debtor or any of its affiliates contained asbestos; and (ii) if the [Bankruptcy] Court does so order, recommending that the reference be withdrawn by the District Court for a determination of that single issue."[12]    The

---

[8]    *See id.*

[9]    *See* ECF No. 1361 ¶¶ 1-7; *see also* ECF No. 1353.

[10]    *See* ECF No. 1506.

[11]    *See* Civ. Case No. 4:25-cv-02201 (S.D. Tex.), ECF No. 2.

[12]    *See* CMO, ECF No. 1411.

Bankruptcy Court solicited the parties' views on its proposed course of action.[13] The Committee, the Future Claimants' Representative (the "**FCR**"), and the United States Trustee filed responses to the CMO identifying the legal and practical infirmities in the proposed course of action and urging the Bankruptcy Court against it.[14] The Debtors and their non-debtor affiliates filed responses supporting the Bankruptcy Court's proposal.[15] On April 29, 2025, the Bankruptcy Court held a status conference to discuss the parties' responses to the CMO.

6.      On May 14, 2025, the Bankruptcy Court issued the Report, which asks this Court to withdraw the reference solely to adjudicate – in a compelled, aggregate proceeding to be held by and before this Court that could involve, among others, potentially over 800 talc victims and their estates, numerous experts and significant time delay for discovery, pre-trial proceedings and a comprehensive trial – "whether any of the talc sold by [BMI] contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases" (the "**Talc-Asbestos Issue**") (the "**Contemplated Action**").[16]

**STATEMENT OF THE ISSUE AND STANDARD OF REVIEW**

7.      The issue presented here is whether there is "cause" under 28 U.S.C. § 157(d) to withdraw the reference from the Bankruptcy Court in part, to determine the Talc-Asbestos

---

[13]   *See id.*

[14]   *See* ECF No. 1426; *see also* ECF No. 1429; *see also* ECF No. 1435.

[15]   *See* ECF No. 1427; *see also* ECF No. 1428.

[16]   Report at 1.

3

Issue.   District courts conduct *de novo* review of a bankruptcy court's report and recommendation to withdraw the reference under 28 U.S.C. § 157(d).[17]

## SUMMARY OF THE ARGUMENT

8.       Respectfully, this Court should decline the Report's recommendation. Reference withdrawal is neither available nor prudent with regard to the Talc-Asbestos Issue.   What is more, the Contemplated Action is flatly impermissible under binding precedent and the United States Constitution.

9.       The Report requests that this Court withdraw the reference as to the Talc-Asbestos Issue under 28 U.S.C. § 157(d), notwithstanding the fact that no adversary proceeding, contested matter, or other litigation is pending in the bankruptcy cases which requires or requests a determination of the Talc-Asbestos Issue.   The absence of any such proceeding renders the Report moot.   This Court cannot withdraw the reference for a matter that is simply not before—*i.e.*, has not been referred to—the Bankruptcy Court.

10.       By the same token, the Contemplated Action fails to meet Article III's case-or-controversy requirement.   Without an underlying dispute, the Bankruptcy Court is not asking this Court to withdraw the reference with respect to an existing proceeding before it, it is asking this Court to itself commence and contour a proceeding to provide an impermissible advisory opinion on the Talc-Asbestos Issue.   The Report should be rejected on this basis alone.

---

[17]  *Curtis v. Cerner Corp.*, No. 7:19-cv-00417, 2020 WL 1983937, at *2 (S.D. Tex. Apr. 27, 2020).

11.     What is more, undertaking the Contemplated Action violates Supreme Court and Fifth Circuit precedent that proscribe aggregate adjudication of the merits of asbestos claims, including those raised in the Talc-Asbestos Issue.  Indeed, the Fifth Circuit's opinion in *Arnold v. Garlock, Inc.*, 278 F.3d 426 (5th Cir. 2001), specifically rejects what the Report proposes here:  forcibly aggregating asbestos personal injury claims for purposes of deciding, *en masse*, whether a particular product is capable of causing asbestos-related disease.  In addition, the Contemplated Action, as roughly described by the Bankruptcy Court, would violate claimants' individual Seventh Amendment right to a jury trial.  The Report should also be rejected on these bases.

12.     The Report could, and should, also be rejected on prudential grounds, as none of the Fifth Circuit's reference-withdrawal factors support following the Report's recommendation.  Among other things, no proceeding exists from which to withdraw the reference, no party is currently requesting a jury trial on the Talc-Asbestos Issue either in this Court or the Bankruptcy Court, and following the Report would cause the Debtors, talc claimants, and this Court to expend significant resources in pursuit of an ultimately unworkable and likely irrelevant Contemplated Action.

13.     Indeed, the Contemplated Action could potentially involve over 800 parties, extensive discovery, depositions, expert reports, motion practice, and a protracted jury trial or trials.  And yet, it would fail to either substantiate or negate all current and future talc claims against the Debtors, as the Report envisions.  Determining that the Debtors *never* sold talc containing asbestos is a practical impossibility, and determining that the Debtors did sell talc containing asbestos at some particular point in time is unlikely to impact all talc

claims against the Debtors.  Moreover, inevitable due process issues with the Contemplated Action mean that any decision that might come out of it would be unlikely to bind all current claimants and would fail to bind any future claimants.

14.    Upon any or all of these bases, which are described in further detail below, we respectfully submit that the Court should reject the Report and decline to undertake the Contemplated Action.

## **ARGUMENT**

I.    **THERE IS NO PROCEEDING FROM WHICH TO WITHDRAW THE REFERENCE NOR ANY CASE OR CONTROVERSY SUPPORTING THE CONTEMPLATED ACTION**

15.    This Court may withdraw the reference from, "in whole or in part, any case or proceeding [in a bankruptcy] . . . for cause shown."[18]  Consequently, the Court cannot withdraw the reference for the Talc-Asbestos Issue, as its adjudication has yet to arise in the bankruptcy cases or any proceeding therein.  Indeed, the Report failed to identify any part of the Debtors' cases or any proceeding therein that raises or requires a determination of the Talc-Asbestos Issue.

16.    The Report states that resolution of the Talc-Asbestos Issue is "necessary and appropriate to resolve multiple matters already argued before [the Bankruptcy C]ourt": "[w]hether BMI is proposing a plan in good faith[,]" whether asbestos claims "can be linked to BMI talc[,]" whether "Testing Claims have any potential viability[,]"[19] and whether "a

---

[18]   28 U.S.C. § 157(d).

[19]   As discussed in the Report, the "Testing Claims" refer to "suits against BMI's parent corporation . . . for negligent testing of asbestos in BMI-mined talc."  Report at 2.

future claims representative is warranted."[20]  But none of these matters is pending before the Bankruptcy Court.  No objection has yet been raised to the Debtors' proposed plan;[21] no objection has been raised to any asbestos claim, whether based on their "link to BMI talc" or any other grounds;[22] no party has sought any resolution, estimation, or other adjudication regarding the merits or value of the Testing Claims; and the Bankruptcy Court has already appointed an FCR and no motion has been made to remove him.

17.    The Fifth Circuit's test for withdrawing the reference under § 157(d) indicates that an "underlying lawsuit" (*i.e.*, some legal proceeding) before the Bankruptcy Court is a prerequisite.  *Guffy v. Brown (In re Brown Med. Ctr., Inc.)*, No. 15-3229, 2016 WL 406959, at *1 (S.D. Tex. Feb. 3, 2016) (explaining that the Fifth Circuit test for withdrawal of the reference requires consideration of, among other issues, "whether the underlying lawsuit is core or non-core, and whether a party has demanded a jury [trial]" (citing *Holland Am. Ins. Co. v. Roy*, 777 F.2d 992, 999 (5th Cir. 1985)).[23]  And no such "underlying lawsuit" exists here.  The Report implicitly concedes as much, recognizing that this Court will need to

---

[20]  *Id.* at 5-9.

[21]  While the Committee did move to dismiss the Debtors' bankruptcy cases for, among other things, a lack of good faith under 11 U.S.C. § 1112(b), the Bankruptcy Court already decided that issue.

[22]  *See, e.g.*, *In re Chateaugay Corp.*, 104 B.R. 622, 625 (S.D.N.Y. 1989) (refusing to withdraw the reference to adjudicate certain proofs of claim because no party has objected to the proofs of claim triggering allowance proceedings and thus "there is . . . no cognizable proceeding as to which the reference may be withdrawn.").

[23]  *See also Mikhov v. United States*, 655 B.R. 584, 590 (S.D. Ind. 2023) ("Of course, a statutory prerequisite to any withdrawal, whether mandatory or permissive, is that 'there be a "proceeding," i.e., a contested matter between debtor and a claimant *in the bankruptcy court* to be withdrawn.'" (quoting *McMillan v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 280 B.R. 806, 807 (D. Del. 2002)).

conjure up the unprecedented Contemplated Action itself, including determining who the parties are and what the procedures will be.[24]

18.    Consequently, the Report is not a request for reference withdrawal. Rather, it is a request for this Court to issue an advisory opinion on the Talc-Asbestos Issue[25]—a request that the Bankruptcy Court had no authority to make[26] and that this Court has no authority to grant.[27]

19.    The Report seizes on statements concerning the presence or absence of asbestos in BMI's talc that have been made during these cases to suggest that a live controversy exists and that "has been fully joined."[28]  But the mere fact that parties may have alluded to disagreements on a factual issue does not satisfy Article III's case-or-controversy requirement; a party must request some specific relief.[29]  Here, no party has

---

[24]  Report at 9.

[25]  1 Norton Bankr. L. & Prac. 3d § 8:1 ("[A]ny proceeding withdrawn by the district court must be an operative part of the proceeding the adjudication of which would grant meaningful relief.  Otherwise, the withdrawn portion of a proceeding may constitute nothing more than a request for an advisory ruling, which may be beyond the subject-matter jurisdiction of an Article III court for lack of a 'case or controversy.'").

[26]  *See Franchise Servs. of N. Am, Inc. v. United States Tr. (In re Franchise Servs. of N. Am., Inc.)*, 891 F.3d 198, 205 (5th Cir. 2018) ("The bankruptcy court's statutory authority to certify questions to this court does not include the authority to request advisory opinions.").

[27]  *See Carney v. Adams*, 592 U.S. 53, 58 (2020) ("The Constitution grants Article III courts the power to decide 'Cases' or 'Controversies.' We have long understood that constitutional phrase to require that a case embody a genuine, live dispute between adverse parties, thereby preventing the federal courts from issuing advisory opinions." (citations omitted)).

[28]  Report at 7.

[29]  *See John Doe #1 v. Veneman*, 380 F.3d 807, 814 (5th Cir. 2004) ("[J]udgments must resolve 'a real and substantial controversy admitting of specific relief through a decree of a conclusion character . . . .'") (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975).

requested any relief regarding the Talc-Asbestos Issue. And that some party may request related relief in the future that might implicate the Talc-Asbestos Issue does not cure the fatal deficiencies of the Contemplated Action.[30] Nor does the Bankruptcy Court's wholly speculative proposition that determining the Talc-Asbestos Issue "will reserve more available resources and yield a higher recovery for the claimants."[31] Report at 3.

## II. THE CONTEMPLATED ACTION WOULD CONTRAVENE CONTROLLING AUTHORITY AND THE SEVENTH AMENDMENT

### A. Binding Authority Forecloses the Contemplated Action

20. Even assuming that the Court could, out of whole cloth, fashion and commence the Contemplated Action, it would nonetheless be impermissible under black-letter law, including the Fifth Circuit's seminal *Arnold* decision.

---

[30] *See, e.g.*, *Calderon v. Ashmus*, 523 U.S. 740, 748-49 (1998) (explaining "the need . . . to prevent federal-court litigants from seeking by declaratory judgment to litigate a single issue in a dispute that must await another lawsuit for complete resolution"); *Coffin v. Malvern Fed. Sav. Bank*, 90 F.3d 851, 853 (3d Cir. 1996) (holding that the bankruptcy court had issued an advisory opinion on an issue because its judgment did not fully resolve an actual controversy); *In re Cubic Energy, Inc.*, 587 B.R. 849, 856-57 (Bankr. D. Del. 2018) ("That the Tauren Trustee's litigation may be imminent, however, is not a sufficient reason to provide an advisory opinion . . . . [T]o decide on the Motion at this stage [prior to proper fact-finding] would be to indulge in appraising a 'hypothetical set of facts.'"); *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, No. 1:06cv433-HSO-RHW, 2020 WL 13240066, at *1 (S.D. Miss. Mar. 31, 2020) ("[D]eciding the admissibility of certain items of evidence, which may or may not ultimately be offered . . . at a trial set months away . . . would in the Court's view amount to an impermissible advisory opinion.").

[31] *See In re Cahill*, 642 B.R. 813, 823-25 (Bankr. N.D. Ill. 2022) (declining to make determination on issue outside of those present in adversarial proceeding notwithstanding determination's potential utility in future negotiations or subsequent actions); *cf. Silverthorne Seismic, L.L.C. v. Sterling Seismic Servs., Ltd.*, 125 F.4th 593, 601 (5th Cir. 2025) ("But itching, though we may be, to reach the merits of an interesting issue, [w]e do not sit to decide moot questions[ ] or to issue advisory opinions." (quotation omitted)).

21.     In *Arnold*, asbestos defendant Garlock sought to centralize asbestos cases under 28 U.S.C. § 157(b)(5) for rulings on purportedly common issues, including "the ability of [certain specified] products to be a producing cause of asbestos-related diseases[.]"[32]  After examining its own precedent, the Fifth Circuit remarked that "at almost every turn this circuit has rejected attempts at aggregation and issue preclusion in asbestos cases."[33]  Consistent with this precedent,[34] the court denied Garlock's request, categorically rejecting any attempt to bind claimants through issue preclusion and aggregation in asbestos cases "no matter how creative the procedural avenue," and emphasizing that "efficiencies to be obtained from issue preclusion, therefore, cannot in this circuit serve as a basis for the transfer of cases under 28 U.S.C. § 157(b)(5)."[35]

22.     The Report thus asks this Court to do what the Fifth Circuit has specifically forbidden.  Although the Report attempts to cabin *Arnold's* holding to the proposition that "individualized injuries cannot be determined on a 'group basis'" in order to support its position that *Arnold* does not foreclose the Contemplated Action,[36]  that position cannot be

---

[32]  *Arnold*, 278 F.3d at 442.

[33]  *Id*. at 443.

[34]  *Arnold's* holding built upon long-standing Fifth Circuit precedent. *See id.* (discussing, *inter alia*, *In re Fibreboard Corp.*, 893 F.2d 706 (5th Cir. 1990), where the court issued a writ of mandamus against the trial of a representative group of asbestos claims on grounds that state substantive law and the Seventh Amendment's right to trial by jury would not tolerate making the resolution of a handful of claims binding as to defendant asbestos manufacturers' liability with respect to all plaintiffs, and *Cimino v. Raymark Indus., Inc.*, 151 F.3d 297 (5th Cir. 1998), which emphasizes that federal rules providing for aggregation of claims cannot override the necessity of proving causation as to each defendant, a requirement of the state law providing the cause of action and of the right to trial by jury).

[35]  *Id.*

[36]  Report at 3.

reconciled with the fact that *Arnold* rejected precisely what the Bankruptcy Court proposes here: using Section 157 – here, section 157(d) – to aggregate asbestos claims to decide the issue of whether certain products are capable of causing asbestos-related diseases.

23.     In a similar vein, Fifth Circuit jurisprudence also disfavors aggregation of tort claims to resolve novel issues in immature torts. For example, in *Castano v. American Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996), plaintiffs injured by a tobacco company filed a class action complaint alleging various claims premised on a "novel and wholly untested theory[.]"[37]  On appeal, the Fifth Circuit reversed the district court's ruling certifying the class of plaintiffs, reasoning that the "collective wisdom of individual juries is necessary before this court commits the fate of an entire industry or, indeed, the fate of a class of millions, to a single jury" and the "certification of an immature tort brings with it unique problems that may consume more judicial resources than certification will save."[38]  As in *Castano*, the tort at issue here—asbestos-related talc claims against BMI—is an immature and developing tort and the theories underpinning claims against the Debtors have not yet been subjected to the "collective wisdom of individual juries"[39] nationwide.[40]  As such, it

---

[37]  84 F.3d at 737.

[38]  *Id.* at 749, 752.

[39]  *Id.* at 752.

[40]  While BMI has settled a handful of talc claims against it, no talc claim against BMI has yet gone to verdict.  Juries have, however, awarded significant verdicts against various defendants for talc claims. *See, e.g.*, *Chatfield ex rel. Estate of Graham v. Whittaker Clark & Daniels, Inc.*, 23 Or. Lit. Arb. Rep. 127, 2023 WL 7382710 (Jan. 23, 2023) (Oregon jury returned a $18.4 million verdict against talc supplier Whittaker, Clark & Daniels); Pierson, B*., Talc Supplier Hit with $29 Million Verdict in South Carolina Trial*, Reuters (Mar. 6, 2023),          https://www.reuters.com/legal/talc-supplier-hit-with-29-mln-verdict-south-

would be inappropriate to have a single jury or judge adjudicate a critical factual component

of the causation inquiry of every single talc case against the Debtors.

24.    The Report relies on a single case, *Jenkins v. Raymark Industries (In re*

*Raymark Industries, Inc.)*, 831 F.2d 550 (5th Cir. 1987), to support its position that the

Contemplated Action is permissible.[41]   Within the *Jenkins* litigation, the Fifth Circuit

affirmed a ruling certifying a class of asbestos claims—all pending in the Eastern District

of Texas—for class-wide adjudication of certain issues related to the "state of the art

defense"—including which of the defendants' products contained asbestos capable of

causing disease—and punitive damages.[42]

25.    *Jenkins* has, however, been abrogated by the Supreme Court's seminal

decision in *Amchem*.[43]  In *Amchem*, the Supreme Court held that common issues could not

"predominate" for purposes of Federal Rule of Civil Procedure 23 where, as here,  the

---

carolina-trial-2023-03-06/ (South Carolina jury returned a $29 million verdict against Whittaker, Clark & Daniels); Angela Cappellino, J.D., *Missouri Judge Upholds $4.7 Billion Verdict Against Johnson & Johnson,* Expert Inst. (Feb. 16, 2023), https://www.expertinstitute.com/resources/insights/missouri-judge-upholds-4-7-billion-verdict-against-johnson-johnson/ (Missouri jury returned a $4.7 billion verdict against talc defendant Johnson & Johnson); National Trial Lawyers, *California Jury Awards $417 Million Against J&J in Talc Cancer Trial*, https://thenationaltriallawyers.org/article/california-jury-awards-417-million-against-jj-in-talc-cancer-trial/ (California jury returned a $417 million verdict against Johnson & Johnson).

[41]  The Report cites to *Jenkins v. Raymark*, Report at 3, but that decision concerns the unrelated issue of interpretation of a settlement agreement.   Given the parenthetical following that citation in the Report, the Committee assumes that the Bankruptcy Court intended to reference an earlier opinion from the Circuit in that case, *Jenkins v. Raymark*, 782 F.2d 468 (5th Cir. 1986).

[42]  *Jenkins*, 782 F.2d at 471 & n.3.

[43]  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

claimants were exposed to asbestos-containing products from different sources in different time periods (*i.e.*, talc from disparate parts of mines, variably tested, produced over the course of decades, and placed into an array of end-use products); some may have no symptoms (*i.e.*, future claimants) while others are ill, and they are from different states requiring the application of different legal standards.[44]   In *Jenkins*, the court found "predominance" with regard to the "state of the art defense" notwithstanding that the plaintiffs were exposed to different products at different times and had different illnesses[45]—a result plainly at odds with *Amchem*.[46]

26.      Moreover, *Jenkins* was decided before the Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, which imposed a more rigorous burden for satisfying Rule 23's commonality requirement.[47]   Thus, it is unlikely that *Jenkins*'s finding that Rule 23's commonality requirement was satisfied based on a liberal construction of that requirement[48] would survive post-*Wal-Mart*.[49]

---

[44]   *Id.* at 622-25.

[45]   *Jenkins*, 782 F.2d at 471-72, 474-75.

[46]   *See In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 396 (S.D.N.Y. 2008) (noting that *Amchem* "sharply curtailed the ability to certify a class action pursuant to Rule 23(b)(3) in the mass tort context" (citation omitted)).

[47]   564 U.S. 338 (2011).

[48]   *See Jenkins v. Raymark*, 109 F.R.D. 269, 271 (E.D. Tex. 1985) ("As a prerequisite to certification, commonality has been liberally construed.") (citation omitted); *see also Jenkins*, 782 F.2d at 472 ("The threshold of 'commonality' is not high.").

[49]   *See M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 839 (5th Cir. 2012) ("Although the district court's analysis may have been a reasonable application of pre-*Wal–Mart* precedent, the *Wal–Mart* decision has heightened the standards for establishing commonality under Rule 23(a)(2), rendering the district court's analysis insufficient.").

27.     Even assuming that *Jenkins* remains good law (it does not), it is inapplicable here.   *Jenkins* involved plaintiffs from one judicial district consensually seeking classification before that district court.  Here, there is not even an underlying lawsuit raising the Talc-Asbestos Issue, much less a group of claimants seeking classification on it or any other aspect of their asbestos claims.[50]  The Contemplated Action would instead require this Court to non-consensually consolidate asbestos claimants (some of whom may not even have yet filed a complaint in the tort system) to adjudicate the merits of their claims against BMI.  No such mechanism exists; and, indeed, the Fifth Circuit categorically rejected the closest attempt to creating one in *Arnold*.  And, since *Arnold*, other courts in this Circuit have rejected attempts to adjudicate the merits of asbestos claims *en masse*.[51]

28.     What is more, as the Fifth Circuit noted in *Arnold*, "[t]he procedure approved in *Jenkins* . . . still required individual jury determinations of causation and damages."[52] The Talc-Asbestos Issue is fundamentally a causation question; it asks the Court to determine whether a particular product's contamination or defect is capable of causing asbestos-related diseases.  The Bankruptcy Court's own framing of the issue clarifies this

---

[50]  Further, the process underlying the Contemplated Action—namely, notice and joinder of all current claimants—renders class certification inappropriate under Rule 23(a)(1), which requires that joinder be impracticable.  *See* Fed. R. Civ. P. 23(a)(1) (requiring that a class be "so numerous that joinder of all members is impracticable").

[51]  For example, in the *Babcock & Wilcox* bankruptcy, Judge Sarah Vance of the Eastern District of Louisiana rejected the debtor's request to aggregate asbestos claims for purposes of resolving common issues, pronouncing herself "awe-struck" at the debtor's suggestion that the court could dispose of the first 95,000 summary judgment motions against asbestos claimants' proofs of claim by eliminating entire categories of claims.  Hearing Transcript at 14, *In re Babcock & Wilcox Co.*, No. 00-cv-558 (E.D. La. Jan. 25, 2002).

[52]  278 F.3d at 443.

point. Report at 1 ("whether *any* of the talc sold by [BMI] contained sufficient quantity and form of asbestos to *cause* mesothelioma or other asbestos-related diseases") (emphasis added). Courts have routinely recognized that establishing exposure and causation in toxic-tort litigation—both elements concerning the question of a product's contamination or defect (*i.e.*, here, whether talc contained asbestos)—are fact-specific inquiries necessitating individualized findings.[53]

29. The Contemplated Action would run counter to controlling precedent. Respectfully, the Court should reject the Report's recommendation.

## B. The Contemplated Action Is Inconsistent with the Seventh Amendment and 28 U.S.C. § 1411

30. The Seventh Amendment to the U.S. Constitution guarantees asbestos claimants the right to a jury trial.[54] Likewise, under "28 U.S.C. § 1411 Congress has

---

[53] *See, e.g.*, *Markut v. Verizon N.Y. Inc. (In re World Trade Ctr. Lower Manhattan Disaster Site Litig.)*, 758 F.3d 202, 211 (2d Cir. 2014) ("[C]laims arising from exposure to toxic or harmful substances often present nuanced and fact-specific questions as to whether and when a legally cognizable injury exists."); *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1241 (11th Cir. 2005) (noting that courts require plaintiffs to "demonstrate 'the levels of exposure that are hazardous to human beings generally as well as the plaintiff's actual level of exposure to the defendant's toxic substance before he or she may recover.'" (citation omitted)); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 852 F.3d 268, 302 (3d Cir. 2017) ("[M]erits questions that are predicated on the existence or nonexistence of historical facts unique to each [p]laintiff . . . generally are not amenable to across-the-board resolution."), *vacated and remanded on other grounds sub nom. Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019).

[54] *See* U.S. Const. amend. VII ("In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ."); *see also In re W.R. Grace & Co.*, 475 B.R. 34, 168 (D. Del. 2012) ("[C]laims of 'asbestos claimants are legal in nature, and thus, they carry with [them] the Seventh Amendment guarantee of a jury trial' for the purpose of 'liquidating their respective claims[.]'" (citation omitted)), *aff'd* 532 F. App'x 264 (3d Cir. 2013), *aff'd* 729 F.3d 311 (3d Cir. 2013), *and aff'd* 729 F.3d 332 (3d Cir. 2013)).

15

expressly preserved the right to a jury trial for personal injury and wrongful death actions" notwithstanding anything to the contrary in the Bankruptcy Code.[55]

31.     As the Supreme Court has stated, "[a]n essential characteristic of [the federal court] system is the manner in which, in civil common-law actions, it distributes trial functions between judge and jury and, under the influence—if not the command—of the Seventh Amendment, assigns the decisions of disputed questions of fact to the jury."[56] Whether a talc product contains sufficient levels of asbestos to cause asbestos-related diseases—the single issue in the Contemplated Action—is a question of fact so assigned.[57] Accordingly, this question cannot be decided by a judge and must instead go to a jury. Taken together with the prohibition of aggregate asbestos claim adjudication, this question must be determined by juries in *individual trials*.

---

[55]  *R.H. Smith v. Lynco-Electric Co. (In re El Paso Refinery, L.P.)*, 165 B.R. 826, 828 (W.D. Tex. 1994); *see also Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 222 (2024) (citing 28 U.S.C. § 1411 and observing that a discharge "cannot 'affect any right to trial by jury' a creditor may have 'with regard to a personal injury or wrongful death tort claim.'"); *Kozec v. Murphy (In re Murphy)*, 569 B.R. 402, 410 n.6 (Bankr. E.D.N.C. 2017) ("The right to a jury trial with regard to a personal injury tort or wrongful death claim is specifically protected in 28 U.S.C. § 1411 . . . .").

[56]  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 431-32 (1996) (quotations and citation omitted).

[57]  *See, e.g.*, *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 387 F. Supp. 3d 323, 340 (S.D.N.Y. 2019) (whether substance was defective so as to be capable of causing harm to be concluded by jury), *aff'd*, 982 F.3d 113 (2d Cir. 2020); *Mitchell v. Beshear*, No. 5:09CV-00003-R, 2011 WL 1458309, at *3 (W.D. Ky. Apr. 15, 2011) ("[C]ontamination of the food with some substance is a jury question."); *Ayala v. Bartolome*, 940 S.W.2d 727, 733 (Tex. App. 1997) (presence of contamination was question for jury); *Sweeney v. Cain*, 243 S.W.2d 874, 875 (Tex. App. 1951) (same).

32.    Even if the Court were to attempt to hold a "collective" jury trial to adjudicate the Talc-Asbestos Issue, the Contemplated Action would nonetheless run afoul of the Seventh Amendment.  The Fifth Circuit's decision in *Cimino* is instructive.  There, the district court implemented a trial plan with several phases for consolidated asbestos cases, with phase III involving trying 160 different individual cases only to determine actual damages (*i.e.*, not full trials), which were then used to extrapolate judgments for the remaining 2,128 cases.[58]  On appeal, the Fifth Circuit held that the phase III judgments were invalid because they did not properly try and determine individual causation, which is required under Texas law and the Seventh Amendment.[59]  The court reasoned that "under Texas law causation must be determined as to 'individuals, not groups'" and "the Seventh Amendment gives the right to a jury trial to make that determination."[60]  So too here. Indeed, the Supreme Court in *Ortiz v. Fibreboard Corp.*, declined to certify asbestos claimants into a single class where, among other things, it would compromise each claimant's Seventh Amendment right to a jury trial and attempt to bind claimants to determinations made "in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."  527 U.S. 815, 845-46 (1999) (citation omitted).

33.    What is more, it would be improper under the Seventh Amendment to sever the Talc-Asbestos Issue from the rest of a talc victim's cause of action.  "[I]nherent in the

---

[58]    *Cimino*, 151 F.3d at 299-300.
[59]    *Id.* at 319-21.
[60]    *Id.* at 319.

17

Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact."[61]  To justify segregating the Talc-Asbestos Issue from the remainder of a talc victim's claim, the issue must be "so distinct and separable from the others that a trial of it alone may be had without injustice."[62]  As the Fifth Circuit recently affirmed, issues "central to" a party's case (or issues which are potentially dispositive) must be tried together with other issues to satisfy the Seventh Amendment.[63]

34.    Contrary to the Bankruptcy Court's assertion, *see* Report at 3, whether BMI's talc contained sufficient levels of asbestos to cause asbestos-related diseases is not just a "threshold issue," it is a core issue central to each victims' case and to the Debtors' defenses. Effectively bifurcating and trying the Talc-Asbestos Issue in the Contemplated Action is inconsistent with the Seventh Amendment because that issue constitutes an indivisible part of the broader causation inquiry.[64]  Moreover, the issue is individualized as each claimant was exposed to different talc mined at different times over decades.

---

[61]  *State of Ala. v. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978).

[62]  *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964).

[63]  *See Gibson, Inc. v. Armadillo Distrib. Enters., Inc.*, 107 F.4th 441, 451 (5th Cir. 2024), *as revised* (Aug. 8, 2024) (ordering a full retrial due to an error as to an issue "central to" a defendant's case that could have been dispositive to the plaintiff's allegation of damages).

[64]  *See id.* (concluding that an issue central to a party's case must be tried together with the other issues in the case).

## III.   CAUSE DOES NOT EXIST TO WITHDRAW THE REFERENCE IN ANY EVENT

35.    Notwithstanding that there is no proceeding from which to withdraw the reference and that the Contemplated Action is impermissible as a matter of law, there still would be no cause to withdraw the reference for the Contemplated Action.    Here, withdrawal of the reference requires a showing of "cause."  28 U.S.C. § 157(d) ("The district court may withdraw, in whole or in part, any case or proceeding referred under this section . . . for cause shown.").[65]  That the Bankruptcy Court is recommending withdrawal of the reference *sua sponte* does not obviate the requirement for this Court to establish cause.[66]

36.    In the Fifth Circuit, such cause is determined by looking to whether

(1) the underlying lawsuit is a non-core proceeding; (2) uniformity in bankruptcy administration will be promoted; (3) forum shopping and confusion will be reduced; (4) economical use of debtors' and creditors' resources will be fostered; (5) the bankruptcy process will be expedited; and (6) a party has demanded a jury trial.[67]

None of these factors counsel for withdrawal of the reference here.

37.    The first factor weighs heavily against finding cause.  Although, as the Report sets out, the Talc-Asbestos Issue would be non-core in a bankruptcy proceeding, no such

---

[65]  Although Section 157(d) provides for mandatory reference withdrawal in certain narrow situations, the Bankruptcy Court acknowledges that mandatory withdrawal is not at issue here.  Report at 4.  Nor could it be given that the Talc-Asbestos Issue relates solely to the causation element of state-law tort claims, so it does not concern any issue affecting non-bankruptcy federal law or interstate commerce.  *See* 28 U.S.C. § 157(d) (setting out elements for mandatory reference withdrawal).

[66]  *See Kirschner v. Agoglia*, 476 B.R. 75, 83 (S.D.N.Y. 2012) (noting that a district court must review *de novo* a bankruptcy court's report and recommendation).

[67]  *Tow v. Park Lake Cmtys., LP (In re Royce Homes, LP)*, 578 B.R. 748, 756 (Bankr. S.D. Tex. 2017) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)).

proceeding exists here; thus, reference withdrawal is unavailable. *See supra* Section I. Regardless, the lack of a non-core proceeding pending before the Bankruptcy Court counsels against reference withdrawal.

38.     As to the second factor, the Report makes no claims that withdrawal of the reference will promote uniformity in the bankruptcy administration. Generally, this factor requires a district court to consider whether the bankruptcy court "is already familiar with the facts of the underlying action,"[68] but here no such action exists. As such, this factor is neutral.[69]

39.     The third factor (*i.e.*, forum shopping) likewise does not support withdrawing the reference. Because the Bankruptcy Court made the request to withdraw the reference *sua sponte*, concerns over whether a party is using withdrawal of the reference for forum shopping are not implicated. Courts have recognized that this factor is neutral and should be given no weight under such circumstances.[70]

---

[68]   *Johnson v. Williamson (In re Brit. Am. Props. III, Ltd.)*, 369 B.R. 322, 327 (Bankr. S.D. Tex. 2007).

[69]   *See Morrison v. Amway Corp. (In re Morrison)*, 409 B.R. 384, 386 (S.D. Tex. 2009) (finding the "uniformity in bankruptcy administration" factor neutral because "there is no argument that withdrawal of the reference will promote uniformity in bankruptcy administration").

[70]   *See, e.g., S. St. Seaport Ltd. P'Ship  v. Burger Boys, Inc. (In re Burger Boys, Inc.)*, 94 F.3d 755, 762 (2d Cir. 1996) ("[B]ecause the district court withdrew the reference *sua sponte*, there was no concern that either party was engaged in forum shopping"); *Milligan v. Traurig (In re Westech Cap. Corp.)*, No. 16-10300-tmd, 2022 WL 2912011, at *3 (Bankr. W.D. Tex. July 22, 2022) (concluding that the forum shopping "factor is neutral" because "nothing . . . in the record suggests improper forum-shopping"); *Mooring Cap. Fund, LLC v. Sullivan*, No. 3:16-CV-74, 2016 WL 4628572, at *7 (N.D.W. Va. Sept. 6, 2016) ("[T]here is no evidence of forum shopping in the instant case and therefore this factor is neither in favor of nor against withdrawal.").

40.    Here, the fourth and fifth factors (*i.e.*, economical use of debtors' and creditors' resources and expediting the bankruptcy process) weigh strongly against withdrawal of the reference.  The Bankruptcy Court's assertion that the Contemplated Action will advance the bankruptcy cases centers on the premise that "[r]esolving [the Talc-Asbestos Issue] will substantiate or negate the basis for hundreds of pending and future claims against BMI."[71]  But that premise is flawed.  None of these claims are currently before the Bankruptcy Court, nor are any proceedings requiring adjudication of the Talc-Asbestos Issue.

41.    The Contemplated Action is, therefore, a pointless exercise that would impose massive costs and delay that otherwise could have, and should have, been avoided.  Indeed, substantial costs and judicial resources would be expended on procedural issues alone.  Given that the Contemplated Action is not part of any pending proceeding, this Court would have to fashion its contours and procedures on a blank slate.

42.    And that is only the beginning, the Contemplated Action would constitute a massive proceeding potentially involving more than 800 distinct parties,[72] *each* with rights to discovery, depositions, motions practice, proffering experts, and participating at trial.  Far from expediting the bankruptcy or conserving estate resources, this process could take years to complete and impose untold millions in costs to insolvent estates and sick and dying claimants.  And at the end, any decision by this Court or juries would likely prove insufficient to progress these cases, if not wholly irrelevant.

---

[71]    Report at 2.

[72]    *Id.* at 4.

43.     Indeed, determining the Talc-Asbestos Issue to "substantiate or negate the basis" for the pending and future claims against BMI is both practically and legally impossible.

44.     As to the practicality, the Debtors have admitted that the talc BMI mined from at least one Montana mine has been found to contain asbestos.  *See* Monagle Dep. at 210-222, Mar. 26, 2025.  And the testing methods that BMI historically employed to detect asbestos were unable to rule out the presence of asbestos in their talc products.[73]  Even using one of the most sensitive testing methodologies applied to BMI talc, a talc sample could come up negative for asbestos contamination and yet still contain "billions of [asbestos] fibers . . . [in] a half-gram dose."[74]

45.     Moreover, asbestos occurs in talc "randomly and sporadically,"[75] meaning one batch of talc could be asbestos-free and the next could contain significant levels of

---

[73]  After 1992, BMI employed certain methods to test its talc products, including the X-ray diffraction method and the polarized light microscopy method.  ECF No. 13 ¶ 31.  Both of these methods have detection limits that cannot rule out asbestos contamination in talc.  *See* FOOD AND DRUG ADMINISTRATION INTERAGENCY WORKING GROUP ON ASBESTOS IN CONSUMER PRODUCTS (IWGACP), WHITE PAPER: IWGACP SCIENTIFIC OPINIONS ON TESTING METHODS FOR ASBESTOS IN COSMETIC TALC PRODUCTS CONTAINING TALC (Dec. 2021) at 11, https://downloads.regulations.gov/FDA-2020-N-0025-0053/attachment_1.pdf ("As a technique, optical microscopy methods, such as [polarized light microscopy], have limitations.  They are sufficient for detecting >1% by weight asbestos as an intentionally added ingredient in 'bulk materials[.]'"); *id.* at 15 (noting the x-ray diffraction method is not a "useful method for detecting low levels of asbestos in talc and talc-containing cosmetics.").

[74]  Rosner, D., *"Nondetected": The Politics of Measurement of Asbestos in Talc,* 1971-1976 (2019), https://ajph.aphapublications.org/doi/full/10.2105/AJPH.2019.305085.

[75]  O'Brien, J., Kanarek, M., *Asbestos in Talc and Mesothelioma: Review of Causality Using          Epidemiology,          at          8          (2020),*

asbestos. According, a ruling that *none* of the talc BMI sold contained injurious levels of asbestos would require access to and testing of *every single batch or container of talc* that BMI ever distributed.[76] The Debtors do not, however, have access to all of the talc they historically sold, or even the talc that was specifically tested for asbestos.[77] And, given the historical testing used methodologies less accurate than those available now, testing results showing no asbestos are unreliable. Proving the negative—that BMI never sold talc containing asbestos sufficient to cause illness—is simply not possible.

46.     On the other hand, finding that certain batches of talc did include asbestos— a showing that the Report suggests would suffice for talc claimants to prevail in the Contemplated Action— would only substantiate the claims of those who claimed exposure to such talc. To substantiate other claims would require individualized findings for each claimed exposure (*i.e.*, individualized causation trials). And future claimants—*i.e.*, those with unmanifested asbestos illnesses—would not even be in a position to make claims about such exposure until they manifest an asbestos disease. Thus, as a practical matter, the

---

https://esmed.org/MRA/mra/article/view/2097#:~:text=The%20Hill%20criteria%20of%20causality,the%20use%20of%20talcum%20powders).

[76] Such comprehensive access to the Debtors' historical talc is highly unlikely. *See, e.g., Strobel v. Johnson & Johnson*, 284 Cal. Rptr. 3d 165, 169 (Cal. Ct. App. 2021) ("The Strobels were unable to produce any containers of the JBP that Doug Strobel actually used or to arrange for testing of the contents of those containers, since all of them were consumed years ago."); *Lanzo v. Cyprus Amax Mins. Co.*, 467 N.J. Super. 476, 518–19 (N.J. App. Div. 2021) ("Pier testified that Imerys' corporate predecessor . . . had a policy to destroy talc samples . . . after two years even during periods of ongoing litigation . . . Furthermore, the outside laboratories that Imerys utilized for testing had also destroyed talc samples . . . .").

[77] *See* Monagle Dep. at 215:9-216:19, Mar. 26, 2025 (Q. Understood. It says at the bottom here, "SAMPLES ARE DISCARDED 3 WEEKS AFTER 8 COMPLETION DATE. Analytical Services Group, Easton, PA." Do you see that? A. I do.).

Contemplated Action would not save resources or expedite the bankruptcy.  It would accomplish quite the opposite.

47.    What is more, as a legal matter, the Contemplated Action would necessarily suffer from grave due process infirmities.  And, absent adequate notice and an opportunity to participate in the Contemplated Action, talc victims cannot be bound by any determination of the Talc-Asbestos Issue.[78]  Due process generally requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[79]

48.    Here, the Debtors' talc products were used in industrial settings and incorporated into countless cosmetic products from numerous brands that were ubiquitous in the marketplace for multiple decades.[80]  As a result, millions of Americans from all demographics may have been exposed to BMI talc.[81]  This exposure profile presents significant, if not insurmountable, practical challenges to providing adequate notice to any of the Debtors' unknown asbestos claimants, much less to those who have no manifested

---

[78]  *See, e.g.*, *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir. 1994) (absence of evidence that victims could have received notice of the bankruptcy proceeding precluded discharge of their claims); *Jeld-Wen, Inc. v. Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 126 (3d Cir. 2010) ("Without notice of a bankruptcy claim, the claimant will not have a meaningful opportunity to protect his or her claim. . . . Inadequate notice therefore 'precludes discharge of a claim in bankruptcy.'" (citation omitted)).

[79]  *Christopher v. Kendavis Holding Co. (In re Kendavis Holding Co.)*, 249 F.3d 383, 386 (5th Cir. 2001) ("The notice must be of such nature as reasonably to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance." (alteration in original) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950)).

[80]  *See* ECF No. 13 ¶¶ 15-27.

[81]  *See id.*

asbestos disease.  Indeed, the Supreme Court has recognized the "[i]mpediments to the provision of adequate notice" to claimants who have "no perceptible asbestos-related disease" may simply be insurmountable.[82]   And the Committee's and the FCR's participation in the Contemplated Action cannot bind individual talc victims to any rulings issued therein.[83]

49.   Because of the inevitable failure to provide due process to all of BMI's claimants, the Contemplated Action cannot address the Talc-Asbestos Issue for every current asbestos claim (or any future claim), rendering it even less useful for saving

---

[82]   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 668 (1997) (citing *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 633 (3d Cir. 1996); *Georgine*, 83 F.3d at 633 ("Problems in adequately notifying and informing exposure-only . . . [claimants] of what is at stake . . . may be insurmountable.")).

[83]   *See, e.g.*, *G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.)*, No. BR 01-30135 (RG), 2008 WL 11513187, at *8 (D.N.J. May 30, 2008) ("The Court . . . finds that it would not comport with due process to allow a judgment entered against the [Asbestos Claimants'] Committee to bind the [i]ndividual [asbestos] [c]laimants."); *In re Quality Beverage Co.*, 181 B.R. 887, 894 (Bankr. S.D. Tex. 1995) (committee "has neither the power nor the authority to bind each individual creditor"); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004) ("[W]hile . . . [c]ommittee had a duty to represent the collective interests of the unsecured creditors, it did not have the authority to bind each individual creditor."); 7 COLLIER ON BANKRUPTCY ¶ 1103.05 (16th ed. 2025) ("[C]ommittees are not authorized or empowered to bind any member of their constituencies. They are vested with considerable power and authority under the Code, but they are not the agents of and cannot bind members of the groups they represent."); *G-I Holdings, Inc. v. Bennet (In re G-I Holdings, Inc.)*, 328 B.R. 691, 697-98 (D.N.J. 2005) (finding the FCR's "[m]ere participation" would not bind future claimants to the outcome of the declaratory judgment action and that "the Legal Representative [FCR] is not a guardian ad litem with the power to bind future claimants"); *In re Imerys Talc Am., Inc.*, 38 F.4th 361, 374 n.9 (3d Cir. 2022) ("We do not suggest, for example, that an FCR is a guardian *ad litem* for the future claimants; true guardians *ad litem* have the legal authority to bind those they represent, which an FCR does not . . . .").

resources or expediting the bankruptcy.[84]  Accordingly, the fourth and fifth factors strongly militate against reference withdrawal.

50.     The sixth factor (*i.e.*, whether a party has demanded a jury trial) also does not favor withdrawal because the talc claimants—the actual holders of the jury trial rights—are not seeking jury trials on the Talc-Asbestos Issue in this forum.  Indeed, they are not seeking to adjudicate this issue at all in the context of these bankruptcy cases.  This factor would only favor withdrawal if the talc creditors currently sought to vindicate their right to a jury trial by seeking withdrawal of the reference, which is not the case here.[85]

51.     The totality of the factors weigh strongly against withdrawing the reference here.

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court overrule and decline the Bankruptcy Court's recommendation to withdraw the reference under 28 U.S.C. § 157(d) to adjudicate the Talc-Asbestos Issue.

---

[84]  *See, e.g.*, *In re Factory Sales & Eng'g, Inc.*, No. 17-11690, 2018 WL 398750, at *2 (E.D. La. Jan. 12, 2018) (finding that withdrawal of the reference would "create a redundancy and waste of resources by both the judiciary and the parties" where, no matter the district court's ruling, the parties would have to re-litigate the same issues in a separate forum).

[85]  *See, e.g.*, *S. La. Ethanol, LLC v. Agrico Sales, Inc.*, No. CIV.A. 11-3059, 2012 WL 174646, at *3 (E.D. La. Jan. 20, 2012) ("To the Court's knowledge no party has requested a jury trial on the claims against Agrico.  Should trial by jury become an issue then the reference can be withdrawn once the case is ready for trial."); *Lopez v. Portfolio Recovery Assocs., LLC (In re Lopez)*, No. 09-70659, 2017 WL 3382099, at *13 (Bankr. S.D. Tex. Mar. 20, 2017) (holding that the jury trial "factor weighs against withdrawal of the reference" where "the Defendant acknowledges that there is no outstanding jury demand for either party in this proceeding").

Dated: June 11, 2025

Respectfully submitted,

**CAPLIN & DRYSDALE, CHARTERED**

*/s/ Kevin C. Maclay*

Kevin C. Maclay (admitted *pro hac vice*)
Todd E. Phillips (admitted *pro hac vice*)
Kevin M. Davis (admitted *pro hac vice*)
Wendy J. Barnett (SDTX No. 3631223)
1200 New Hampshire Avenue NW, 8th Floor
Washington, DC 20036
Telephone:    (202) 862-5000
Facsimile:    (202) 429-3301
Email:    kmaclay@capdale.com
tphillips@capdale.com
kdavis@capdale.com
wbarnett@capdale.com

-AND-

**BROWN RUDNICK LLP**

David J. Molton (admitted *pro hac vice*)
Eric R. Goodman (admitted *pro hac vice*)
Gerard T. Cicero (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone:    (212) 209-4800
Facsimile:    (212) 209-4801
Email:    dmolton@brownrudnick.com
egoodman@brownrudnick.com
gcicero@brownrudnick.com

-AND-

Jeffrey L. Jonas (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Telephone:    (617) 856-8200
Facsimile:    (617) 856-8201
Email:    jjonas@brownrudnick.com

27

*Counsel for the Official Committee
of Unsecured Creditors*

28

## CERTIFICATE OF SERVICE

I certify that on June 11, 2025, I caused a true and correct copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Southern District of Texas on those parties registered to receive electronic notices.

/s/ *Gerard T. Cicero*
Gerard T. Cicero