IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

---------------------------------------------------------

In re:

BMI OLDCO INC., *et al.*,[1]

Debtors.

---------------------------------------------------------

Civil Action No. 4:25-cv-02193

Bankruptcy Case No. 23-90794 (MI)

## INTERESTED PARTY AMERICAN INTERNATIONAL INDUSTRIES' MOTION TO INTERVENE AND BRIEF IN SUPPORT OF AORR

American International Industries ("A-I-I"), as a retailer of products containing Barretts Minerals, Inc.'s ("BMI") talc, submits this brief in support of its motion to intervene and in support of the *Abatement Order and Report and Recommendation to District Court* ("AORR") (ECF No. 1479):[1]

---

[1] References herein to pleadings in the bankruptcy case, Case No. 23-90794 (MI), will be cited as "ECF No. __".

1

## INTRODUCTION

A-I-I is a family-owned partnership that operates from a single location with fewer than 800 employees. In 2017, A-I-I ceased using talc in its Clubman Talc due to what it considers entirely frivolous litigation. A-I-I is a retailer of products containing BMI's talc and, during the period Clubman was produced with talc, BMI was the sole source of talc.

A-I-I supports the proceedings recommended by the AORR to determine whether BMI's talc (and therefore Clubman) contained asbestos, and A-I-I seeks to intervene to participate in those proceedings. Section 1109—procedurally implemented by Federal Rule of Bankruptcy Procedure 2018—gives parties in interest a right to participate in a bankruptcy case. A-I-I is by definition a party in interest under Section 1109 as a creditor, and it therefore "may appear and be heard on any issue in a case under this chapter" under the Code. That alone is sufficient for intervention.

Moreover, A-I-I has an interest in the proceedings because (1) A-I-I could face possible preclusive effects, factual or legal, as downstream seller of BMI's talc; (2) A-I-I could face possible preclusive effects from parties asserting claims against both BMI and A-I-I; (3) A-I-I has unique physical evidence regarding BMI's talc; (4) BMI and Claimants will use evidence in this proceeding that is unlikely to be available to A-I-I to defend against future lawsuits; (5) A-I-I's interests are not fully protected by BMI; (6) BMI's proposed Plan of Reorganization precludes A-I-I from recovery; and (7) A-I-I strongly believes that the "science" used by plaintiffs' experts is not reliable.

This Court should adopt the proceedings outlined by the AORR and permit A-I-I to participate in them.

2

## ARGUMENT

## I.    Section 1109 of the Code Gives "Parties In Interest" the Ability to Participate in Bankruptcy Cases.

A-I-I should be permitted to intervene. Federal Rule of Bankruptcy Procedure[2] 2018 states: "After hearing on such notice as the court orders and for cause, the court may permit an interested entity to intervene generally or in any specified matter."

The Advisory Committee Notes to Rule 2018 explain that the rule "implements" 11 U.S.C. § 1109; *see also In re La Sierra Fin. Servs., Inc.*, 290 B.R. 718, 728 (B.A.P. 9th Cir. 2002) ("Section 1109(b) is implemented by Rule 2018."). Section 1109(b) provides: "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter."

*Collier on Bankruptcy* similarly explains that, "Rule 2018(a) should be read in conjunction with other provisions of the Bankruptcy Code which permit intervention. In chapter 9 and 11 cases, a party in interest has the right to appear and be heard on any issue in a case, and other entities are accorded the right to be heard." 9 Collier on Bankruptcy P 2018.01 (16th 2025) (citing Section 1109(b)). Indeed, "[a]n entity given the right to be heard under section 1109 is necessarily a party in interest in that case and need not seek leave under Rule 2018(a) to intervene in the case." *Id.* at P 2018.02. A-I-I nevertheless is

---

[2] The Federal Rules of Bankruptcy Procedure apply even after reference is withdrawn. *See, e.g.*, Rosenberg v. DVI Receivables XIV, LLC, 818 F.3d 1283, 1293 (11th Cir. 2016) ("The Federal Rules of Bankruptcy Procedure govern cases arising under title 11, including those tried in district court"); *In re Celotex Corp.*, 124 F.3d 619, 629 (4th Cir. 1997).

formally seeking intervention—even though not strictly necessary—as a party-in-interest because of its strong interest in the proceedings and its desire to ensure its ability to participate.

The AORR itself has the same view. Citing Section 1109(b), the AORR stated: "It is this Bankruptcy Court's understanding that any party-in-interest may participate in the District Court's determination." ECF No. 1479 at 9. Judge Isgur listed examples that include "(at a minimum)": "(ii) Any person alleging that all or some talc sold by BMI talc contained sufficient quantity and form of asbestos to cause mesothelioma or other asbestos-related diseases (creditors under § 1109)." *Id.* Likewise, although not specifically listed, creditors who contest this issue also have an interest.

Just last year, the Supreme Court discussed the broad nature of "party in interest" under Section 1109(b). *See Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268 (2024). The Court explained: "This text is capacious. To start, § 1109(b) provides an illustrative but not exhaustive list of parties in interest." *Id.* at 280. Indeed, the "plain meaning of the phrase thus refers to entities that are potentially concerned with or affected by a proceeding." *Id.* at 278. And the purpose of Section 1109(b) was to ensure "[b]road participation," which in turn "promotes a fair and equitable reorganization process." *Id.* at 280; *see also id.* (explaining that Section 1109(b) and its predecessors "constituted an effort to encourage and promote greater participation in reorganization cases").

In short, parties in interest have a right to participate in bankruptcy cases under Section 1109(b), and the phrase "parties in interest" is interpreted broadly and expressly includes creditors.

4906-9606-4342 v.2

## II.     A-I-I Is a "Party In Interest," and the Court Should Permit A-I-I to Participate in the Proceedings Recommended by the AORR.

A-I-I is a retailer of products containing BMI's talc and, during the period Clubman Talc was produced with talc, BMI was the sole source of talc. A-I-I has been named in dozens of lawsuits in which plaintiffs allege they contracted mesothelioma from asbestos contamination of Clubman. BMI is also sued in some of them. A-I-I's legal interests are necessarily intertwined with this proceeding.

A-I-I filed its Proof of Claim in BMI's bankruptcy proceeding on May 6, 2024, and is a creditor.[3] It is therefore, by definition, a party in interest under 11 U.S.C. § 1109(b), which states that a "party in interest, including . . . a creditor. . . may raise and may appear and be heard on any issue in a case under this chapter."

A-I-I's creditor status is sufficient on its own to give A-I-I the ability to participate. But, even if the Court were to look further at A-I-I's circumstances, A-I-I is interested in the outcome of the proceedings and should be permitted to intervene for seven additional reasons:

### A.     Possible Preclusive Effects, Factual or Legal, As Downstream Seller of BMI's Talc.

A-I-I was in the chain of distribution of BMI's talc. BMI assured A-I-I that the talc did not contain asbestos. A-I-I maintained physical retains of BMI's talc for almost two decades. After testing the samples (retains), Claimants' own experts confirm that there was no asbestos contamination of the type Claimants now allege. A-I-I has a direct interest in a

---

[3] *See* Ex. 1, A-I-I's Proof of Claim.

general causation determination regarding the very talc it sold. If general causation were established, A-I-I could be left prone to liability in multiple cases. A-I-I is entitled to participate in a proceeding that would have direct impact on its liability.

**B.    Possible Preclusive Effect of Same Parties Asserting Claims Against BMI and A-I-I.**

Some of the same plaintiffs suing A-I-I are also Claimants in the BMI bankruptcy proceeding. For example, Dianne LaSalle and the Estate of Jack LaSalle have concurrently filed claims against BMI.[4] ECF No. 401. If there is a finding regarding BMI's talc favorable to Claimants, they will likely claim that issue is *res judicata* as to A-I-I because it could have participated in this proceeding.

**C.    A-I-I Has Unique Physical Evidence to Defend BMI's Talc.**

A-I-I also possesses unique physical evidence central to this case. A-I-I is in the best position to present its own physical evidence from its shipments and batches and explain how this is the best evidence of what Clubman Talc product consumers encountered. Evidence of what was in or around a talc mine may be circumstantial evidence of what could be in a consumer product. But, the batch samples A-I-I retained are direct evidence of what was, and what was not, in its consumer products. Moreover, A-I-I has favorable testing done of those samples by Claimants' own experts with results that contradict their claims in this case. A-I-I is the only party in a position to authenticate and produce this unique and critically important evidence. If there is a chance that A-I-I will be

---

[4] *See* A-I-I Ex. 2, *Dianne LaSalle, individually, as Personal Representative of the Estate of the Decedent Jack LaSalle, and on behalf of all wrongful death beneficiaries of Decedent Jack La Salle v. A-I-I et al.*, Second Amended Complaint for Personal Injuries.

6

disadvantaged by the findings in this proceeding in its own lawsuits and in its claims against BMI, then A-I-I is entitled to a seat at the table.

### D.     Evidence Presented in Proceedings Unavailable to A-I-I for Its Future Defense.

Likewise, BMI and Claimants will use evidence in this proceeding that is unlikely to be available to A-I-I to defend against future lawsuits, such as a voluminous production of more than 80,000 pages of BMI's internal documents—documents plaintiffs' experts rely on. A-I-I's inability to participate would expose it to arguments in subsequent litigation that it is bound by or affected by any adverse results. Even if the outcome is not legally binding, A-I-I will be forced to defend itself against factual findings reached without its participation. This will necessarily require A-I-I to incur additional expenses and will be difficult to overcome.

### E.     BMI's Interests, While Overlapping, Are Not Identical with A-I-I's and A-I-I Is Not Fully Protected.

A-I-I will face irreparable harm if it cannot participate because its interests in BMI's bankruptcy proceedings may deviate from the Debtors' interests. A-I-I filed its Proof of Claim in the bankruptcy proceeding to protect its own pecuniary interests related to the disposition of that matter, and any potential compromise reached by BMI may not adequately protect these interests. Depending on the terms, a compromise agreement may substantially impair BMI's customers, such as A-I-I, and their abilities to defend their products. In summary, A-I-I has standing as a creditor party-in-interest with significant and substantial legal interests to this proceeding that are not adequately protected by the current parties, and A-I-I should be permitted to participate.

7

**F.** **BMI's Proposed Plan of Reorganization Precludes A-I-I from Recovery.**

A-I-I can be directly and adversely affected by the Debtors' proposed plan of reorganization, in that A-I-I's claims to an asbestos trust would be the sole remedy and enjoin A-I-I from suing BMI (and other protected parties). The proposed plan defines "Indirect Talc Personal Injury Claim" to include any claim for contribution or indemnity. JOINT PLAN OF REORGANIZATION FOR BMI OLDCO INC. AND BARRETTS VENTURES TEXAS LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE 10. ("The Plan").[5] The Plan further defines "Talc Personal Injury Claim" to include an Indirect Personal Injury Claim. *Id*. at 15. Under "Treatment and Classification of Claims and Equity Interests," Class 3 is "Talc Personal Injury Claims." *Id*. at 21. The table on p. 21 "Summary of Classification and Treatment of classified Claims and Equity interests" declares class 3 Talc Personal Injury Claims "impaired" and "entitled to vote." *Id*. Under "Treatment of the Talc Personal Injury Claims" on page 23: "The sole recourse of a Holder of a Talc Personal Injury Claim on account of such Talc Personal Injury Claim shall be to the Talc Personal Injury Trust, and each such Holder shall have no right whatsoever at any time to assert its Talc Personal Injury Claim against any Protected Party." *Id*. at 23. The Plan provides: "Each Holder of a Talc Personal Injury claim is entitled to vote to accept or reject this Plan." 3.2 (c) (iii). Thus, the proposed plan expressly recognizes an indirect tort claimant as a party in interest that may participate in the bankruptcy proceeding.

---

[5] *See* Ex. 3, The Plan.

G.    **"Science" Used by Plaintiffs' Experts in the Underlying Talc Litigation Is Unreliable.**

Finally, A-I-I fundamentally disagrees with the "science" and "methodologies" plaintiffs' experts utilize to purport to find "asbestos" in BMI talc. As just two examples: Plaintiffs' own expert geologist, Mr. Mark Bailey, previously stated under oath before being hired by plaintiffs' attorneys: "I conclude that talc produced by Barretts Minerals from its Dillon Montana Regal and Treasure mines has been repeatedly tested and that for all practical purposes, it meets USP purity standards and can be considered asbestos free."[6] Even the International Agency for Research on Cancer concluded as recently as last month that the relevant Dillon Montana Treasure and Regal Mines have ***no*** "occurrence of asbestos"[7]

III.    **A-I-I Supports the AORR's Proposed Proceedings.**

A-I-I adopts the arguments presented by BMI and the non-debtor affiliates in support of the AORR. *See* District Court ECF Nos. 5, 6. This Court can and should withdraw the reference to hold proceedings to determine if BMI's talc contained asbestos. Those proceedings can be handled efficiently and fairly.

/ / /

/ / /

/ / /

/ / /

---

[6] Ex. 4, Bailey Decl., June 12, 2015.

[7] Ex. 5, IARC 2025 Talc Monograph at 56.

## CONCLUSION

This Court should adopt the proceedings outlined by the AORR and permit A-I-I to participate in them.

Date: July 17, 2025                    Respectfully submitted,


By:    */s/ Robert E. Thackston*
       Robert E. Thackston
       Texas Bar No. 00785487
       robert.thackston@nelsonmullins.com
       David M. Medina
       Texas Bar No. 00000088
       Paula D. Pendley
       Texas Bar No. 24123678
       paula.pendley@nelsonmullins.com
       (admission pending)
       Emily K. Nguyen
       Texas Bar No. 24143732
       emily.nguyen@nelsonmullins.com

       **NELSON MULLINS RILEY &**
       **SCARBOROUGH, LLP**
       **1111 Bagby Street,**
       **Heritage Plaza, Suite 2100**
       **Houston, Texas 77002**

4906-9606-4342 v.2

## <u>CERTIFICATE OF CONFERENCE</u>

A conference was attempted on July 17, 2025, with David Molton, counsel for claimants' committee, Robert Brady, counsel for future claimants' committee, and Amy Quartarolo, counsel for Debtor. Mr. Brady responded but not with consent. Attorney Molton has not responded to emails at 1:30 p.m. and 4:47 p.m. on 07-17-25. Attorney Quartarolo indicated they will not be able to determine an answer within the time frame necessary to file this motion. Thus, no opposing party agrees to the relief requested by this motion.

Date:  July 17, 2025                             Respectfully submitted,

By:     */s/ Robert E. Thackston*
**Robert E. Thackston**
Texas Bar No. 00785487
S.D. Tex. ID No. 17568
robert.thackston@nelsonmullins.com
**David M. Medina**
Texas Bar No. 00000088
S.D. Tex. ID No. 2609723
david.medina@nelsonmullins.com
**Paula D. Pendley**
Texas Bar No. 24123678
(SDTX Admission Pending)
paula.pendley@nelsonmullins.com
**Emily K. Nguyen**
Texas Bar No. 24143732
S.D. Tex. ID No. 3896600
emily.nguyen@nelsonmullins.com

**NELSON MULLINS RILEY &
SCARBOROUGH, LLP**
3333 Lee Parkway, Suite 750
Dallas, TX  75219
Phone:  469-484-6100
Fax:  469-828-7217

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document was circulated using the Court's CM/ECF system to all registered users in this case on the 17th day of July, 2025.

*/s/ Robert E. Thackston*

4906-9606-4342 v.2